HENDRICKS COUNTY BOARD OF ZONING APPEALS; Howard Conley, Alan Richardson, John Randall, Denley Tindall, and Joann Groves, Members Thereof; Hendricks County Planning and Building Department and Robert E. Jarzen, Planning Director; The County Commissioners of Hendricks County, Indiana, Richard P. Myers, Hursel C. Disney, and John D. Clampitt, Appellants–Defendants,

v.

Dwight BARLOW and Jody Barlow, Appellees–Plaintiffs.

No. 32A05–9309–CV–331.

Court of Appeals of Indiana.

Oct. 10, 1995.

Gregory W. Black, Deckard & O'Brien, Danville, for appellants.

Jack C. Brown, John O. Moss, Indianapolis, for appellees.

## OPINION

RUCKER, Judge.

Because Dwight and Jody Barlow were housing wild and exotic animals on their property, the Hendricks County Planning and Building Department issued a citation against them for a zoning violation. According to the Department certain provisions of a Hendricks County ordinance prohibited the housing of wild animals on residential property. The Hendricks County Board of Zoning Appeals affirmed the violations and also denied the Barlows' subsequent request for a variance. After the Barlows sought judicial review, the trial court set aside the Board's decision, ruling that a county's authority to regulate the possession of wild animals is preempted by federal and state law. Defendants (referred to collectively as "County") now appeal raising several issues for our review which we consolidate and rephrase as one: Does federal or state law prohibit county government from regulating the possession of wild animals through local zoning ordinances?

Since 1988, the Barlows have owned and occupied their present residence in Hendricks County, Indiana. From that time until this dispute arose the Barlows have pos-

sessed on their property various wild[1] and exotic[2] animals including, among others: African lions, cougars, Rhesus monkeys, African hedgehogs, a Bengal tiger, a black bear, a red rat snake, a gibbon, and a coyote. The Barlows raise and breed the animals as pets and house them primarily in outdoor cages located on their property. They also possess certain relevant federal and state permits including a U.S. Department of Agriculture Breeders Permit and a Breeders License issued by the Indiana Department of Natural Resources (DNR).[3]

In July 1990, the Hendricks County Planning and Building Department issued a citation against the Barlows for allegedly violating Hendricks County Zoning Ordinance 5.3.1 which dictates in relevant part: "No ... land shall be used ... for·any purpose other than a use which is permitted and specified in the district in which such ... land is located." The Barlows' property is located in an area designated as "Suburban Resident District." The Barlows appealed the citation to the Hendricks County Board of Zoning Appeals (BZA). After the BZA affirmed the violation, the Barlows sought judicial review. The trial court remanded the cause to the BZA for further proceedings. Thereafter the Barlows applied for a variance from the BZA seeking permission to continue housing the animals on their property. Following extensive hearings on the matter, the BZA denied the Barlows' application and again affirmed the violation. Again the Barlows sought judicial review. After conducting another hearing the trial court entered judgment declaring the BZA had no authority to restrict or cite the Barlows for possession of properly licensed wild and exotic animals. The trial court's judgment was supported by findings and conclusions in which the trial court determined among other things: "the county authority to deal with the location of wild and exotic animals has been preempted by the State and Federal Governments to the exclusion of the county's right to govern its own lands concerning the location of these animals." *Record* at 11. This appeal ensued in due course.

■ In reviewing the decision of a zoning board, we are bound by the same standard of review as the trial court. *Yater v. Hancock County Planning Comm'n* (1993), Ind.App., 614 N.E.2d 568, 570, *cert. denied*, —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d. 73 (1994). Because this issue is a pure question of law, our standard does not require deference to the determinations of the BZA and reversal is appropriate if an error of law is demonstrated. *Natural Resources Comm'n v. AMAX Coal Co.* (1994), Ind., 638 N.E.2d 418, 423, *reh'g denied; Town of Beverly Shores v. Bagnall* (1992), Ind., 590 N.E.2d 1059, 1061. Absent such illegality, this court may not substitute its judgment for that of the BZA. *Bagnall,* 590 N.E.2d at 1061.

■ The preemption doctrine is based on the supremacy clause of the United States Constitution which provides in relevant part that the law of the United States "shall be the supreme law of the land ... anything in the constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. It is well settled that state or local law which conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992). In determining whether a federal statute has preempted state or local law, our ultimate task is to ascertain the intent of Congress. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *Wilson v. Pleasant* (1994), Ind.App., 645 N.E.2d 638, 640, *trans. granted.*

■ Three variations of federal preemption doctrine exist: express preemption, which occurs when a statute expressly defines the scope of its preemptive effect, *Morales v. Trans World Airlines, Inc.,* 504 U.S.

---

1. A "wild animal" is an animal whose species usually lives in the wild or usually is not domesticated. Ind.Code § 14–2–2–1.

2. An exotic mammal means a species that is:
  (1) Not native to Indiana; or

(2) Extirpated from Indiana and either:
  (A) A wild animal; or
  (B) A feral animal other than a dog or cat.
Ind.Code § 14–2–2–1.

3. *See* I.C. § 14–2–7–8.

374, 381, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992); *Metropolitan Life Ins. Co. v. Christ*, 979 F.2d 575, 578 (7th Cir.1992), field preemption, which occurs when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area, *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992); *Seaboard Sur. Co. v. Ind. St. Dist. Council* (1995), Ind.App., 645 N.E.2d 1121, 1123, *trans. denied*, and conflict preemption, which occurs either where it is impossible to comply with both federal and state or local law, *Gade*, 505 U.S. at 98, 112 S.Ct. at 2383, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

■■■ Courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws. Indeed, where Congress legislates in a field traditionally occupied by the states, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the *clear and manifest* purpose of Congress." *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989) quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (emphasis added). Reasonable zoning laws are a proper exercise of a government's historic "police power" which has been defined as the authority to provide for the public health, safety, and morals. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569, 111 S.Ct. 2456, 2462, 115 L.Ed.2d 504 (1991); *Barnes v. City of Anderson* (1994), Ind.App., 642 N.E.2d 1004, 1007; *Saurer v. Board of Zoning Appeals* (1994), Ind.App., 629 N.E.2d 893.

The Animal Welfare Act, 7 U.S.C. §§ 2131–2159 ("the Act"), regulates the transportation, purchase, sale, housing, care, handling, and treatment of animals, with the intent of fostering humane treatment and care of animals and protecting animal owners from theft of their animals. *See* 7 U.S.C.

§ 2131. The Barlows are licensed as "Class B Dealers" pursuant to the Act and contend that County is foreclosed from encroaching upon their federally protected right to possess wild and exotic animals.

■■■ A recent decision of the Seventh Circuit Court of Appeals addressed the issue of local ordinance preemption by the Animal Welfare Act. In *DeHart v. Town of Austin, Ind.*, 39 F.3d 718 (7th Cir.1994) a business owner principally engaged in the sale of exotic and wild animals filed suit challenging a town ordinance which prohibited the possession of wild animals or animals capable of inflicting serious physical harm or death to human beings. Determining that the Act did not operate to preempt the town from regulating wild animals, the Seventh Circuit reasoned that none of the above-mentioned methods of preemption were applicable. To the contrary, the Act expressly contemplates state and local cooperation in fulfilling the statute's objectives. For example, the Act declares that "[t]he Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this chapter and of any State, local, or municipal legislation or ordinance on the same subject." 7 U.S.C. § 2145(b). Moreover, the Act provides that the statutory authority delegated to the Secretary of Agriculture to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors," *see* 7 U.S.C. § 2143(a)(1), "shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary." 7 U.S.C. § 2143(a)(8). The *DeHart* court concluded, "we discern no Congressional intent to ban state or local legislation in the regulation of wild animals." *DeHart*, 39 F.3d at 722.

In addition to *DeHart*, courts in other jurisdictions have reached similar conclusions. *See, e.g., Cresenzi Bird Importers, Inc. v. State of New York*, 658 F.Supp. 1441, 1444 (S.D.N.Y.1987), *aff'd*, 831 F.2d 410 (2nd Cir.1987) (noting that "[w]ildlife is regulated concurrently by federal and state authorities"); *Medlock v. Board of Trustees* (1991),

Mass.App., 580 N.E.2d 387, 389, n. 3, *review denied,* 586 N.E.2d 10 (rejecting argument that state animal welfare regulations were preempted by Animal Welfare Act); *Kerr v. Kimmell,* 740 F.Supp. 1525, 1530 (D.Kan. 1990) (provisions in Animal Welfare Act "show that Congress anticipated that states would remain active in this area of traditional state interest"); *Winkler v. Colorado Dep't of Health* (1977), 193 Colo. 170, 564 P.2d 107 (Animal Welfare Act expressly endorsed state-federal cooperation and thus did not preempt state animal importation regulations). We agree with the foregoing authority. A plain reading of the Act demonstrates that its goals are intended to be realized in part through state and local participation. Congress demonstrated no express or implied intent to preempt state or local government from regulating in the area. The trial court's determination to the contrary is erroneous and requires reversal.

We next address whether the trial court erred in determining that County had no authority to cite the Barlows for possession of wild and exotic animals because only state government is empowered to regulate in the field. The Barlows contend the trial court correctly decided this issue and assert Ind. Code § 14–3–18–1 to –12 shows a "clear statement of the legislative intent" to preempt local governments from regulating the possession or location of wild or exotic animals. *Brief of Appellee* at 30.

■■■■ We do not agree with the Barlows' position. First, they read the statute too broadly. Rather than demonstrating a preemption in the field of exotic and wild animals, I.C. § 14–3–18–1 to –12 merely sets forth the licensing procedure for persons desiring to engage in activity in a number of areas including lake preservation, dams, construction of channels, flood control, removal of substances from streams, as well as possession of wild animals. In any event, only where a statute is ambiguous does this court attempt to ascertain the intent of the legislature and then interpret the statute to effectuate that intent. *Economy Oil Corp. v. Indiana Dep't of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215. A statute is ambiguous, and thus open to judicial con-

struction, when it is susceptible to more than one meaning. *Amoco Production Co. v. Laird* (1993), Ind., 622 N.E.2d 912. When a statute is clear and unambiguous on its face we may not interpret the statute; rather the statute is held to its clear and plain meaning. *Whitacre v. State of Indiana and IDNR* (1993), Ind.App., 619 N.E.2d 605, *adopted* (1994), 629 N.E.2d 1236. The licensing procedure detailed in I.C. § 14–3–18–1 to –12, which includes notice and public hearing, is clear and unambiguous. There is simply nothing to interpret. Thus, we are prohibited from engaging in an evaluation of legislative intent. County can not be prohibited from citing the Barlows for possession of wild and exotic animals on the basis that only state government is empowered to regulate in the field. Like the determination of federal preemption, the trial court's ruling on this issue is in error as well and must also be reversed.

■■■■ Anticipating this court might disagree on the federal and state preemption issues, the trial court issued a "Secondary Ruling." Essentially the ruling provided that assuming County had the authority to regulate the location of wild and exotic animals, then there was sufficient evidence before the BZA to deny the Barlows' request for variance. The Barlows contend this secondary ruling is void and argue that once the trial court signed the original judgment, it lost jurisdiction to enter a separate order. Our research reveals no authority in support of this proposition and the Barlows cite none. In their complaint before the trial court the Barlows challenged the BZA's citation of zoning violation as well as the BZA's denial of their petition for variance. Regardless of form, the trial court ruled on both issues. We find no error here. More importantly the Barlows have presented no argument to this court challenging the BZA's denial of their petition for variance. Similarly, other than their contention that the trial court's ruling is void, the Barlows have not cross-appealed challenging the trial court's affirmance of the BZA ruling. Thus, as far as the denial of the Barlows' petition for variance is concerned, there is nothing before us to review.

The trial court's judgment on the question of federal and state preemption is reversed. In all other respects the judgment is affirmed.[4]

Judgment affirmed in part and reversed in part.

SHARPNACK, C.J., and DARDEN, J., concur.

---

4. The trial court's secondary ruling which included findings, conclusions, and judgment, discussed primarily the variance issue. However, it also encompassed the County's "issuance of the citation by the building inspector." *Record* at 12. As with the variance ruling, the Barlows do not cross-appeal on the question of whether the trial court erred in sustaining the BZA's determination that they violated the terms of the ordinance in the first place. Hence, although we have concluded that County is not preempted by federal or state law from regulating the possession and location of wild or exotic animals, we express no opinion as to whether the specific ordinance in this case properly regulated in the field. We do note in passing that the BZA determined that housing wild and exotic animals in a district zoned "Suburban Resident" is inconsistent with "residential use" and thus the Barlows violated the ordinance. However, unlike *DeHart*, 39 F.3d 718, the ordinance here does not mention animals of any kind, nor does it define the term residential use. In any case the Barlows do not argue this issue on appeal and therefore it is not before us for review.