**Jaqueria Marie ROGERS, by and through her mother and next friend, Shelette S. ROGERS, Appellant–Plaintiff,**

v.

**COSCO, INC., Appellee–Defendant.**

**No. 03A05–9911–CV–486.**

Court of Appeals of Indiana.

Nov. 2, 2000.

Rehearing Denied Dec. 7, 2000.

Harry M. Philo, Linda Miller Atkinson, Detroit, Michigan, Douglas J. Fees, Huntsville, Alabama, Peter Campbell King, Columbus, Indiana, Attorneys for Appellant.

Randall R. Riggs, Julia Blackwell Gelinas, Kevin C. Schiferl, T. Joseph Wendt, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant JaQueria Marie Rogers ("JaQueria"), by and through her mother and next friend, Shelette S. Rogers ("Rogers"), appeals the trial court's grant of summary judgment in favor of Defendant–Appellee Cosco, Inc. ("Cosco").

We reverse and remand for further proceedings.[1]

---

1. We note that Cosco has filed a motion to strike Rogers's appellate brief or, in the alternative, to strike Rogers's statement of the facts. We observe that Rogers's so-called "statement of the facts" is woefully deficient as it does not follow the admonition of Ind.Appellate Rule 8.3(A)(5) which requires appropriate references to the record and it does not follow case law holding that the statement of the facts is not intended to be a portion of the appellant's argument. However, we exercise our discretion to decide this

*ISSUES*

We address the following issues:

I. Whether Rogers's state court action is pre-empted by the National Traffic and Motor Vehicle Safety Act.

II. Whether Rogers designated evidence sufficient to rebut the statutory presumption set forth in Ind.Code § 34–20–5–1.

III. Whether there is a genuine issue of material fact as to the existence of a safer alternative product.[2]

*FACTS AND PROCEDURAL HISTORY*

In March or April of 1996, Rogers purchased a Cosco Grand Explorer booster restraint seat ("Grand Explorer"). The Grand Explorer exhibits a seating platform that "boosts" or raises the child from a motor vehicle's seat. The Grand Explorer does not extend up to provide a separate support for a child's back or head, but utilizes the motor vehicle's own upright seat cushion for this function. It also employs a forward barrier, called a shield, to restrain forward motion of a child's upper torso in the event of a collision.

On May 12, 1996, JaQueria, Rogers's thirty pound, twenty-two-month old daughter, was seated in the Grand Explorer as a passenger in the back seat of a Toyota Tercel. The Grand Explorer was secured by the lap-belt component of the rear seatbelt.

As the Tercel proceeded down a North Carolina highway, it was struck head-on by a vehicle driven by a drunk driver. The Grand Explorer restrained JaQueria, leaving her seated in the same position as prior to impact. However, JaQueria suffered two cervical fractures from the acceleration/deceleration forces caused by the collision. JaQueria is partially paralyzed as a result of her injuries.

Rogers filed a complaint for damages on behalf of JaQueria.[3] The complaint alleged that Cosco was negligent in designing, manufacturing, distributing, and selling a booster seat that was not crashworthy. The complaint also alleged that Cosco failed to exercise reasonable care when it allowed the Grand Explorer to leave its control without adequate warnings or instructions.[4] In short, Rogers alleged that Cosco violated its duty of reasonable care when it designed, manufactured, distributed, and sold the Grand Explorer for use by children who weigh less than forty pounds, and that it violated its duty in not warning purchasers that there was no testing to substantiate Cosco's claim that the Grand Explorer could be safely used by children who weigh between thirty and sixty pounds. Rogers's complaint also included a claim for punitive damages.

Cosco filed a motion for summary judgment and supporting brief, claiming that the Federal National Traffic and Motor Vehicle Safety Act ("Safety Act") and a safety regulation promulgated thereunder pre-empted Rogers's state law claims. Cosco also claimed that there was no evidence to overcome the rebuttable presumption set forth in Ind.Code § 34–20–5–1 and that Cosco therefore was not negligent as a matter of law. Cosco further claimed that there is no safer alternative design in existence, which must result in a finding, as a matter of law, that the design of the Grand Explorer was not deficient. Finally, Cosco claimed that Rogers's punitive damage claim should fail as a matter of law.

---

matter on the merits. Accordingly, we deny Cosco's motion.

**2.** Because the viability of Rogers's tort claims is still at issue, we believe it is premature to consider the propriety of Rogers's claim for punitive damages.

**3.** The complaint was filed in Indiana because Cosco is headquartered in Bartholomew County.

**4.** Rogers further alleged the breach of an implied warranty. This allegation was voluntarily dismissed, and the dismissal is not a subject of this appeal.

The trial court granted Cosco's motion for summary judgment. In doing so, the court noted its belief that Rogers's state law claims were pre-empted by the Safety Act and that the Grand Explorer was presumed not to be deficient under Ind.Code § 34-20-5-1. The court further noted its belief that Rogers's failed, as a matter of law, to establish her punitive damage claim. Rogers now appeals.

## DISCUSSION AND DECISION

### I. PRE-EMPTION UNDER THE SAFETY ACT

Rogers contends that the trial court erred in determining that her state court action is pre-empted by the Safety Act. The purpose of the Safety Act is "to reduce traffic accidents and death and injuries to persons resulting from traffic accidents." 49 U.S.C. § 30101. Two provisions of the Safety Act are particularly relevant to the issue of pre-emption. First, the Safety Act contains a pre-emption clause that states in pertinent part:

When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of the State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter.

49 U.S.C. § 30103(b)(1). Second, as a specific exception to the pre-emption clause, the Safety Act contains a state common law savings clause which states that "[c]ompliance with a motor vehicle safety standard under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e).

The responsibility of developing and promulgating federal motor vehicle safety standards under the Safety Act was given first to the Secretary of Transportation and later to the Administrator of the National Highway Traffic Safety Administra-

tion. 49 C.F.R. § 1.50(a). The parties agree that the applicable federal standard is 49 C.F.R. § 571.213, which is denominated by the parties as Federal Motor Vehicle Safety Standard 213 ("FMVSS 213"). FMVSS 213 allows a manufacturer to meet its performance criteria regarding child restraint systems through the use of booster seats, and it contains both minimum performance and specific design requirements for child booster seats. FMVSS 213 also allows a manufacturer to meet upper torso child restraint standards through the use of a forward barrier, such as the shield placed on Cosco's Grand Explorer. It further allows manufacturers to market booster seats for use by children under forty pounds. *See* FMVSS 213, § 5.5.2(f) (stating that "the booster seat shall not be recommended for children whose masses are less than 13.6 kg [approximately thirty pounds]").

■ The pre-emption doctrine is grounded in the Supremacy Clause of Article Six of the United States Constitution, which establishes federal law as the supreme law of the land. *See* U.S. Const. Art. VI, cl. 2. Our analysis of the scope of the statute's pre-emption is guided by the principle that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). Any understanding of the scope of a pre-emption statute must rest primarily on "a fair understanding of congressional purpose," as discerned from the language of the pre-emption statute and the "statutory framework" surrounding it. *Id.* at 2250-51. Also relevant to the analysis is the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 2251. (quotations omitted). Administrative regulations promulgated pursuant to congressional authorization have the

same pre-emptive effect as federal statutes. *York v. Union Carbide Corp.*, 586 N.E.2d 861, 865 (Ind.Ct.App.1992).

Courts do not lightly attribute to Congress or to a federal agency the intent to pre-empt state or local laws. *Hendricks County Bd. of Zoning Appeals v. Barlow*, 656 N.E.2d 481, 484 (Ind.Ct. App.1995). The historic police powers of the states are not to be superseded by federal law unless that was the clear and manifest purpose of Congress. *Train Collision at Gary, Ind. on Jan. 18, 1993*, 670 N.E.2d 902, 910 (Ind.Ct.App.1996), *trans. denied*, 683 N.E.2d 591 (1997), *cert. denied*, 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230. The intent of Congress may be "express," i.e., expressly stated in the statute, or "implied," i.e., implicitly stated in the statute's structure and purpose. *Ziobron v. Crawford*, 667 N.E.2d 202, 206 (Ind.Ct.App.1996), *trans. denied.*[5] Implied pre-emption is manifested when a state law conflicts with federal law. This "implied conflict pre-emption" occurs either where it is impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *In re Guardianship of Wade*, 711 N.E.2d 851, 854 (Ind.Ct. App.1999).

### 1. Express Pre-emption

In the present case, Cosco does not claim that the Safety Act's pre-emption and savings clauses, when read together, expressly pre-empt a state common law claim. Instead, Cosco contends that the savings clause is rendered inapplicable in Indiana by the legislature's decision to include products liability common law negligence actions within the framework of the products liability statute. Specifically, Cosco refers to Ind.Code § 34–20–1–1,

which states that the products liability statute governs all actions that are (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product. Ind.Code § 34–20–1–1 further states that the products liability statute governs "regardless of the substantive legal theory or theories upon which the action is brought."

In determining whether the Safety Act's savings clause has been rendered inapplicable by the inclusion of common law claims in the products liability statutory framework, we look to the intent of the Safety Act. We also look to the language of Ind.Code § 34–20–1–1 and to Cosco's arguments pertaining to Rogers's crashworthiness claim.

The Senate Report accompanying the original Safety Act bill stated that "[t]he federal minimum safety standards need not be interpreted as restricting state common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, 89th Cong., 2d Sess., reprinted in 1996 U.S.Code Cong. & Admin. News 2709, 2720. The House report stated that "[Congress] intended, and [the savings clause] specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law, particularly those relating to ... tort liability." H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966). "[T]he saving[s] clause reflects a congressional determination that occasional nonuniformity is a small price to pay for a system in which juries not only create, but also enforce, safety standards, while simultaneously providing necessary compensation to victims." *Geier v. American*

---

**5.** A third variation of pre-emption is expressed as "field pre-emption," which exists where a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area. *See Gade v. National Solid Wastes*

*Management Association*, 505 U.S. 88, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992); *Seaboard Surety Co. v. Ind. State District Council*, 645 N.E.2d 1121, 1123 (Ind.Ct.App.1995), *trans. denied.* Field pre-emption is neither asserted nor applicable in this case.

*Honda Motor Co., Inc.*, 529 U.S. 1913, 120 S.Ct. 1913, 1920, 146 L.Ed.2d 914 (2000).

Allowing common law tort remedies, while at the same time pre-empting particular safety standards found in motor vehicle statutes or administrative regulations, appears to be a congressional compromise between the interest of Congress in uniformity and its interest in permitting States to compensate accident victims upon the basis of general common law tort standards. It is also apparent that the application of tort standards can sometimes complement the purposes of the Safety Act and attendant regulations setting forth minimum safety standards by supplying manufacturers with an additional incentive to design a safe product.

The intent of the Safety Act is to pre-empt state statutes and administrative regulations promulgated with the specific purpose of regulating motor vehicle safety in a manner different from that found in the Safety Act and federal regulations. We conclude, however, that Congress did not intend that the application of a state's general common law standards should be "rendered inapplicable" by the codification of that state's common law as it applies to product liability actions. Indeed, we conclude that Congress specifically intended that the general standards of the common law should assist in reducing "death and injuries to persons resulting from traffic accidents." In reaching our conclusion, we are informed by the language of Ind.Code § 34–20–1–1, which recognizes the existence of the substantive, non-statutory legal theory derived from the common law, albeit within the procedural framework of the product liability statute. We further are informed by Cosco's recognition and insistence that Rogers's claims find their genesis in our common law and that the common law standards developed by our case law remain applicable to a determination of whether Rogers has met the foundational requirements of her claims.

Cosco points to certain portions of the Product Liability Act that it believes are in derogation of the common law (i.e., two year statute of limitations regardless of minority and non-party defense), and it concludes that any claim under the Act loses its common law status. We initially note that none of these provisions are directly at issue here. We further note that the presence of such provisions in derogation of the common law has not prevented us from recognizing that the Products Liability Act, as it applies to strict liability claims, is a codification of the common law of products liability. *See Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 481 (Ind.Ct.App.2000) (citing *Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480, 482 (Ind.Ct.App.1984)). *But see, Rogers v. Ford Motor Co.*, 925 F.Supp. 1413 (N.D.Ind.1996). The upshot is that although certain procedural portions of the Act are to be strictly construed as in derogation of common law, the viability of tort claims made under the Act, whether sounding in negligence or strict liability, is to be determined by reference to the common law from which the claims originated. This is so because the common law of products liability negligence is simply restated in the products liability statute. Rogers's claims in the present case arise from the general common law, and it is these types of claims that are the subject of the Safety Act's saving clause.

### 2. Implied Pre-emption

In *Geier*, the United States Supreme Court held that a state common law action is pre-empted if it conflicts with the Safety Act. 120 S.Ct. at 1919. The court concluded that a state court action based upon a claim that manufacturers had a duty to install an airbag in a 1987 Honda was pre-empted because it was in direct conflict with the gradual passive restraint phase-in deliberately imposed by 49 C.F.R. § 571.208. *Id.* at 1922.

The court further held, however, that a tort action is not pre-empted if it "seek[s]

to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor, i.e., a minimum safety standard." *Id.* at 1918. In doing so, the court cited the Brief for United States as Amicus Curiae 21 (explaining that a common law claim that a vehicle is defectively designed because it lacks antilock brakes would not be preempted by 49 C.F.R. § 571.105, a safety standard establishing minimum requirements for brake performance which does not require anti-lock brakes in all vehicles). *Id.*

In the present case, the evidence designated by both parties indicates that FMVSS 213 allows but does not require the use of a booster seat such as the Grand Explorer in protecting children from injuries. The evidence further indicates that FMVSS 213 is intended to establish only minimum safety standards for child restraint systems. Thus, as *Geier* explicitly provides, a State may impose a stricter standard through the agency of its general common law of torts. We conclude that there is no conflict between Rogers's proposed tort remedy and the minimum standards of FMVSS 213. Therefore, Rogers's attempt to impose a greater safety standard through the prohibition of booster seats such as the Grand Explorer for children under forty pounds is not pre-empted by the Safety Act. Thus, the trial court erred in granting summary judgment on this basis.

## II. REBUTTABLE PRESUMPTION

Having determined that Rogers's claims are not pre-empted by the Safety Act, we now turn to the question of whether Rogers designated admissible evidence to rebut the statutory presumption found in Indiana's Products Liability Act. Ind. Code § 34–20–5–1 states that in a product liability action there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product (1) "was in conformity with the generally recognized state of the art applicable to the safety product at the time the product was designed, manufactured, packaged, and labeled;" or (2) "complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana."

The trial court granted summary judgment on the basis that the Grand Explorer "complied with FMVSS 213." (R. 1359). The trial court did not specifically address whether Rogers had designated evidence sufficient to rebut the presumption that such compliance is proof that the Grand Explorer is not defective and that Cosco is not negligent. Also, the trial court did not specifically address whether there was designated evidence to establish that the Grand Explorer was in conformity with the generally recognized state of the art or whether Rogers had designated evidence sufficient to rebut the presumption that a "state of the art" product is not defective and that Cosco is not negligent in producing and selling a "state of the art" product.

In her appellate briefs, Rogers argues that there is a genuine issue of material fact as to whether either FMVSS 213 or the "state of the art" requirement has been met. Rogers argues that the Grand Explorer has not met either requirement because Cosco "failed to perform failure mode and effect safety engineering analysis of its child safety seat, which would have been reasonably necessary to make [the] recommendation" required by FMVSS 213 as to the maximum mass and height of children "who can safely occupy the system." Appellant's Brief at 22 (citing 49 C.F.R. § 571.213, § 5.5.2(f)). Rogers further argues that even if the presumption has been established, she has designated evidence sufficient to rebut it.

Here, a showing that the Grand Explorer met the FMVSS 213 standards made it incumbent upon Rogers to designate ad-

missible evidence to rebut the statutory presumption. In an attempt to do so, Rogers designated certain portions of the depositions and articles. However, the trial court never ruled upon Cosco's objection to the admissibility of such evidence. The crucial question of whether Rogers met her burden rests upon the issue of whether her designated evidence met the designation requirements of Ind.Trial Rule 56. Therefore, we remand with instructions that the trial court rule on the aforementioned objection.

### III. SAFER ALTERNATIVE

Under Indiana summary judgment procedure, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Jarboe v. Landmark Community Newspapers*, 644 N.E.2d 118, 123 (Ind. 1994); *Brannon v. Wilson*, 733 N.E.2d 1000, 1003 (Ind.Ct.App.2000); *Lenhardt Tool & Die Co. v. Lumpe*, 703 N.E.2d 1079, 1082 (Ind.Ct.App.1998), *trans. denied.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the non-moving party to establish that a genuine issue does in fact exist. *Jarboe, id.*

■ In the present case, under federal procedure, Cosco would be entitled to a grant of summary judgment upon showing that Rogers has failed to make a showing of an essential element of her crashworthiness claim. More specifically, a failure by Rogers to designate admissible evidence to establish the presence of a safer alternative to the Grand Explorer would require a grant of summary judgment in Cosco's favor. Under our procedure, however, Rogers is not required to establish the presence of a safer alternative until Cosco shows the absence of any genuine issue of material fact as to that presence. Accordingly, we begin by analyzing Cosco's motion for summary judgment, supporting brief, and designation of evidence to ascertain whether Cosco has made a prima facie

showing which shifts the burden to Rogers.

In its supporting brief, Cosco points out that Rogers's crashworthiness claim hinges upon the existence of known neck loading tolerances for young children. Cosco also points out that proof of the existence of a safer alternative, i.e. a five-point convertible seat with tether that would have limited accident-related neck loading forces, also hinges on the existence of data pertaining to tolerances. Cosco argues that it is impossible to show the existence of a safer alternative because at the time the Grand Explorer was manufactured, and even at the time the appellate briefs were filed, there was no meaningful data that showed the neck loading tolerances of small children.

In support of its motion for summary judgment, Cosco designated portions of the depositions of two experts hired by Rogers, the deposition of Gary Whitman regarding child restraint design and the deposition of Dennis F. Shanahan, M.D. regarding the mechanisms of JaQueria's injuries. This evidence indicates that there is no scientific basis upon which to determine the existence of a safer alternative child restraint, and this evidence, coupled with designated evidence that the Grand Explorer was of a sufficient design to meet the federal requirements which allowed it to be sold for use by children under forty pounds, is prima facie evidence that there is no genuine issue of material fact as to whether a safer alternative child restraint system is in existence. Thus, the burden passes to Rogers to establish that a genuine issue of material fact does exist.

In her opposition to Cosco's motion for summary judgment, Rogers designated portions of Whitman's and Shanahan's depositions. Both men opined that JaQueria would not have received enhanced injuries if she had been secured in a five-point convertible seat with tether because such an alternative design would have managed the crash energy she experienced within tolerable levels. Noting that a court can

consider only properly designated evidence which is admissible at trial, Cosco moved to strike these portions of Whitman's and Shanahan's statements. Cosco contended that Whitman's and Shanahan's opinions were unreliable as mere subjective belief, lacking any factual or technological support sufficient to make their opinions admissible under Ind.Evidence Rule 702(b).

Cosco's motion to strike implicates the trial court's function as gatekeeper "in ensuring that an expert's testimony rests on a reliable foundation and is relevant to the issue at hand." *Wallace v. Meadow Acres Manufactured Housing, Inc.*, 730 N.E.2d 809, 812 (Ind.Ct.App. 2000). This function involves an exercise of the trial court's discretion to determine whether the offered testimony has "a sufficiently reliable basis so that the expert's testimony will 'assist the trier of fact to understand the evidence or determine a fact in issue.'" *Id.* (quoting Ind.Evidence Rule 702; *Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 550 (Ind.Ct.App.1999), *trans. denied, cert. denied,* —— U.S. ——, 120 S.Ct. 1424, 146 L.Ed.2d 315 (2000)). Specifically, the court must determine whether the reasoning or methodology underlying the expert testimony is scientifically valid and whether it can be applied to the facts at issue. *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 596 (Ind.Ct. App.1996), *trans. denied.* Knowledge under the rule must connote "more than subjective belief or unsupported speculation." *Ammerman*, 705 N.E.2d at 550. A valid scientific connection between the expert testimony and the pertinent inquiry is a precondition to admissibility. *Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 966 (Ind.App.1999), *transfer denied.* If an expert "cannot tie [his] assessment of data to known scientific conclusions, based on research or studies, then there is no comparison for the jury to evaluate and the expert's testimony is not helpful to the jury." *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 614 (7th Cir.1993).

Evid.R. 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Subsection (a) represents an adoption of Federal Rule of Evidence 702. *Steward v. State*, 652 N.E.2d 490, 498 (Ind.1995). Therefore, federal evidence law is instructive in interpreting its requirements. Subsection (b) "is unique in its express requirement that expert testimony must be based upon reliable scientific principles." *Id.* The concerns articulated in the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), coincide with the express requirements of Evid.R. 702(b). *Id.* Therefore, the federal evidence law expressed in *Daubert* is instructive in applying Evid.R. 702(b). *Id.; Ammerman*, 705 N.E.2d at 550.

While not presuming to set out a definitive checklist or test regarding factors which bear on the reliability inquiry, the *Daubert* court outlined key considerations: (1) whether the theory or technique at issue can and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error; (4) whether standards controlling the technique's operation exist; and (5) whether the technique is generally accepted within the relevant scientific community. *Ammerman*, 705 N.E.2d at 551 (citing *Daubert*, 113 S.Ct. at 2796–97). Although these considerations are useful, "there is no specific 'test' or set of 'prongs' which must be considered in order to satisfy [Evid.R. 702(b)]." *Id.* (quoting *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind.1997)). Rather, reliability may be es-

tablished by judicial notice or by sufficient foundation to convince a court that the relevant scientific principles are reliable. *Id.* When laying a sufficient foundation, the focus must be on the principles and methodology behind the science rather than the conclusions generated. *Id.*

In the present case, the trial court did not rule on Cosco's motion to strike. The question of whether the disputed portions of Whitman's and Shanahan's statements are admissible has a direct bearing on whether the presumptions set forth in Ind. Code § 34–20–5–1 have been rebutted and whether there is a genuine issue of material fact on the "safer alternative" element of Rogers's crashworthiness claim. The trial court's failure to rule on the admissibility of the evidence requires us to remand to the trial court for such proceedings as may be necessary to determine whether the statements of Whitman and Shanahan meet the requirements of Evid.R. 702. Also on remand, the trial court is instructed to rule on Cosco's motion to strike certain material pursuant to Ind.Trial Rule 56(C) on the basis that the articles and treatises cited were not properly designated.[6]

## CONCLUSION

We reverse the trial court's grant of summary judgment. We remand with instructions that the trial court rule on Cosco's motion to strike and on other evidentiary questions arising under T.R. 56. We further instruct the trial court to follow the aforementioned ruling with a ruling on Cosco's motion for summary judgment.

Reversed and remanded with instructions.

SULLIVAN, J., and VAIDIK, J., concur.

---

**6.** Cosco also argued that the articles and treatises were inadmissible under Ind.Evid.

Rule 803(18).