**John FREIDLINE and Donna Freidline, Appellants (Plaintiffs),**

v.

**SHELBY INSURANCE COMPANY, Appellee (Defendant).**

**No. 71S03–0107–CV–335.**

Supreme Court of Indiana.

Aug. 28, 2002.

Fred R. Hains, Fred R. Hains & Associates, South Bend, IN, Attorneys for Appellants.

Daniel W. Glavin, Beckman, Kelly & Smith, Hammond, IN, Attorneys for Appellee.

Steven M. Badger, Anne L. Cowgur, McTurnan & Turner, Indianapolis, IN, Laura A. Foggan, Meredith Fuchs, Wiley, Rein & Fielding, Washington, D.C., of counsel, Attorneys for Amicus Curiae Insurance Environmental Litigation Association.

George M. Plews, Donna C. Marron, Plews Shadley Racher & Braun, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Manufacturing Association.

## ON PETITION TO TRANSFER

RUCKER, Justice.

### Case Summary

Complaining that toxic fumes from substances used to install carpet in an office building injured them, occupants of the building sued the carpet installer, the building owners, and others. When the building owners' insurance carrier refused to defend and indemnify them, the owners

filed a third party complaint to enforce their rights under the insurance policy. The building owners also alleged the insurance carrier denied coverage in bad faith. The trial court entered summary judgment in the insurance carrier's favor on both claims. On review, the Court of Appeals reversed. Having previously granted transfer, we now affirm in part and reverse in part the judgment of the trial court.

### Facts and Procedural History

John and Donna Freidline own a commercial building in South Bend. In August 1997, they hired a subcontractor to replace the carpet in some of the offices. During the carpet installation, several employees who worked in the building complained that toxic fumes from the carpet glue sickened them. The employees sued the Freidlines, Steve Beachey d/b/a Joers Floor Center of Indiana, Inc., Valley Development Company, Inc., Armstrong Inc., and the W.W. Henry Co., claiming both compensatory and punitive damages.

The Shelby Insurance Company insured the Building. The Freidlines notified the insurance carrier and requested Shelby to defend them in the legal action and to indemnify them in case of judgment. Citing a pollution exclusion in the insurance policy, Shelby declined to either defend or indemnify. The Freidlines then filed a third party complaint against Shelby to enforce their rights under the insurance policy. They also alleged the company's denial of coverage was done in bad faith. Thereafter, the Freidlines filed a motion for summary judgment against Shelby. After conducting a hearing, the trial court denied the Freidlines' motion and entered summary judgment in favor of the insurance company. The Freidlines appealed. The Court of Appeals reversed finding that Shelby was obligated under the policy to defend and indemnify the Freidlines.

*Freidline v. Shelby Ins. Co.,* 739 N.E.2d 178, 184 (Ind.Ct.App.2000). The Court also determined that Shelby acted in bad faith in failing to do so. *Id.* at 185. We affirm in part and reverse in part the judgment of the trial court.

### Discussion

#### I. Standard of Review

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan,* 728 N.E.2d 855, 858 (Ind.2000). Summary judgment should be granted only if the evidence authorized by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* Here, there is no dispute of the facts. Accordingly, this is a proper case for summary judgment, and our standard of review is de novo. *See LCEOC, Inc. v. Greer,* 735 N.E.2d 206, 208 (Ind.2000); *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243 (Ind.2000). We view the pleadings and designated materials in the light most favorable to the non-movant, in this case, Shelby. *See LCEOC, Inc.,* 735 N.E.2d at 208.

#### II. Pollution Exclusion

At issue first is whether bodily injury resulting from the toxic fumes in carpet glue is excluded from insurance coverage. The Freidlines' general liability insurance policy with Shelby provides that the company "will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those

damages." R. at 231 (emphasis omitted). This insuring agreement is subject to several exclusions, including a pollution exclusion:

This insurance does not apply to: ...

Bodily injury and property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ...

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

R. at 232–33 (emphasis omitted).

The Freidlines contend that fumes emanating from carpet glue are not included in the policy's definition of pollutants, and thus bodily injury arising from those fumes is covered. Relying on precedent from this Court,[1] the Court of Appeals agreed, finding the pollution exclusion ambiguous and construing it against the insurance company so as not to exclude coverage for injuries resulting from release of carpet glue fumes. *Freidline*, 739 N.E.2d at 184. Accordingly, the Court of Appeals reversed the trial court's grant of summary judgment in favor of Shelby on the defense and indemnification issue. We agree and summarily affirm the Court of Appeals on this point. However, we disagree with our colleagues that Shelby acted in bad faith when it failed to defend and indemnify the Freidlines.

### III. Bad Faith

Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind.1993); *Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173, 181 (1976). In recognizing a cause of action in tort for a breach of that duty, we have also noted that a cause of action will not arise every time an insurance claim is denied. *Hickman*, 622 N.E.2d at 520. For example, a good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Id.* On the other hand, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Id.* To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability. *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind.Ct.App. 1992).

Here, the Freidlines contend that Shelby had no legitimate basis for denying coverage because the company knew of precedent from this Court finding the definition of pollutants ambiguous and thus strictly construing the pollution exclusion against insurance companies. The Freidlines specifically point to a letter their counsel sent to Shelby, dated October 25, 1999, detailing recent cases involving the pollution exclusion decided by this Court and the Court of Appeals. R. at 272–73. In response, Shelby points to the plain language of the insurance policy's pollution exclusion arguing that the definition of pollutants includes any fumes and therefore bodily injury arising out of the release of glue fumes is not covered. Moreover, although Shelby concedes it knew of the

---

1. *See Seymour Mfg. Co. v. Commercial Union Ins. Co.*, 665 N.E.2d 891 (Ind.1996); *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996); *see also Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926 (Ind.Ct.App. 1999).

cases at the heart of this dispute, the company argues that the holdings in these cases only determined that the pollution exclusion was ambiguous as applied to the facts of each case.

In *American States Insurance Company v. Kiger*, 662 N.E.2d 945 (Ind.1996), the Indiana Department of Environmental Management sought reimbursement from Kiger, the owner of a Sunoco gas station, for clean-up costs due to contamination from a leaking underground gasoline tank. Kiger, in turn, looked to his insurer, American States, for defense and indemnification. The insurance company denied coverage based on the pollution exclusions in the policies issued to Kiger. In addressing the question of whether gasoline is a pollutant as defined by the owner's garage liability policy,[2] this Court was particularly troubled by an interpretation that would exclude coverage for a large segment of Kiger's gas station's business operations. *Id.* at 949. After expressing concern, we strictly construed the language against the insurer by finding the policy ambiguous because the term pollutant does not obviously include gasoline. *Id.* In a three-to-two decision,[3] we specifically held, "If a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language of the contract must be explicit." *Id.*

Similarly, in *Seymour Manufacturing Company, Inc. v. Commercial Union Insurance Company*, 665 N.E.2d 891 (Ind. 1996), the United States Environmental Protection Agency ("EPA") sought to recover clean-up costs from Seymour Manufacturing Company ("SMC"), which stored, treated, and disposed of waste generated by manufacturers. The EPA alleged that SMC allowed hazardous materials to spill, leak, or ooze from the containers causing soil contamination, fumes, fires, and odor problems. SMC sued its insurance carrier, Commercial Union, for a declaratory judgment when the insurer refused to defend SMC. This Court, relying on *Kiger*, found that Commercial Union had a duty to defend SMC.[4] *Id.* at 892.

Relying on *Kiger* and *Seymour*, the Court of Appeals, in *Travelers Indemnity Company v. Summit Corporation of America*, 715 N.E.2d 926 (Ind.Ct.App. 1999), followed this Court's lead and construed the pollution exclusion against the insurer so as not to exclude coverage for environmental claims made against Summit. *Id.* at 935. Summit's principal business was manufacturing and finishing metal parts. Several of its sites in Indiana were the target of a soil and groundwater clean-up. Summit sought a declaration that its insurer had a duty to defend and indemnify the company for certain liability claims made against it by the EPA, other regulatory agencies, and third parties. In

---

2. The definition of pollutants in American States' garage policy is identical to the definition in the Freidlines' general liability policy.

3. Justice DeBruler penned the majority opinion, with concurrences from Justices Dickson and Selby. Justice Sullivan dissented, with Chief Justice Shepard concurring, concluding that the insurance policy excluded coverage because the policy "did not cover the accidental discharge of the contaminating pollutant gasoline." *Kiger,* 662 N.E.2d at 950 (Sullivan, J., dissenting).

4. As in *Kiger,* Justice DeBruler wrote for the majority, with Justices Dickson and Selby concurring. Chief Justice Shepard concurred, accepting *Kiger* as stare decisis for the purposes of this case. *Seymour Mfg. Co.,* 665 N.E.2d at 893 (Shepard, C.J., concurring). Justice Sullivan dissented, contending genuine issues of fact existed as to whether the hazardous waste spills were expected or intended under the "sudden and accidental" language of the pollution exclusion. *Id.* (Sullivan, J., dissenting).

its decision, the Court of Appeals observed:

> Were we writing on a clean slate, we might well conclude that the language of the exclusion is clear and excludes coverage for the environmental claims against Summit. However, our supreme court has twice recently considered the exclusionary language that is, for practical purposes, the same as in the exclusions here. Both with regard to the duty to indemnify in *American States Ins. Co. v. Kiger* and the duty to defend in *Seymour Mfg. Co. v. Commercial Union Ins.* our supreme court has determined the exclusion to be ambiguous and has construed it against the insurer.

*Id.*

Shelby, in its response to the Freidlines' summary judgment motion, distinguished these cases from the instant case in terms of business operations and exposures. Shelby argued that in *Kiger, Seymour,* and *Summit,* the business operations all involved the "handling and use of toxic or potentially polluting substances, so that the pollution exclusion would virtually negate coverage." Br. of Appellee at 9. On the other hand, the Freidlines, Shelby argued, own an office building—an operation that does not regularly use toxic or caustic substances. Additionally, Shelby argued previous cases involved environmental clean-up, whereas the suit against the Freidlines involves bodily injury to workers in the office building.

■ Although we refute these contentions by summarily affirming the Court of Appeals on the pollution exclusion coverage issue, they do form a rational, principled basis for denying liability. The scope of the pollution exclusion is an evolving area of law, subject to differing interpretations.[5] The pollution exclusion is one of the most frequently litigated exceptions found in a staple insurance industry product—the comprehensive general liability policy. *Tri–Town Corp.,* 863 F.Supp. at 38; *see also Madison Constr. Co.,* 735 A.2d at 106. This is also evident in the trial court's grant of summary judgment in favor of Shelby. After considering *Kiger, Seymour,* and *Summit,* the trial court found that the pollution exclusion in Shelby's general liability policy "does not appear ambiguous." R. at 311. Inasmuch as we find there is a rational basis for Shelby's actions, and Shelby supports its position with good faith legal argument, the Freidlines have failed to establish by clear and convincing evidence that Shelby breached its duty to act in good faith.[6]

---

**5.** For example, Shelby points to recent out-of-state decisions holding injuries resulting from similar types of emissions are excluded from insurance coverage by the pollution exclusion. *See, e.g., Assicurazioni Generali, S.p.A. v. Neil,* 160 F.3d 997 (4th Cir.1998) (carbon monoxide); *West Am. Ins. Co. v. Band & Desenberg,* 138 F.3d 1428 (11th Cir.1998) (indoor air pollution); *Haman, Inc. v. St. Paul Fire & Marine Ins. Co.,* 18 F.Supp.2d 1306 (N.D.Ala. 1998) (methyl parathion—substance used by an exterminator). *See also* cases cited by *Amicus* Insurance Environmental Litigation Association including: *Am. States Ins. Co. v. Nethery,* 79 F.3d 473 (5th Cir.1996) (paint and glue fumes); *Essex Ins. Co. v. Tri–Town Corp.,* 863 F.Supp. 38 (D.Mass.1994) (carbon monoxide); *Madison Constr. Co. v. Harleysville*

*Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100 (1999) (concrete sealant fumes).

The Massachusetts district court also observed that the majority of courts that have reviewed the pollution exclusion language, which is very similar to the language contained in Shelby's insurance policy and is nearly identical throughout the fifty states, have ruled the pollution exclusion unambiguous and thus enforce the exclusion in accordance with its plain language. *Tri–Town Corp.,* 863 F.Supp. at 40.

**6.** We observe this is true both for the duty to indemnify and the duty to defend. Although the duty to defend is broader than the duty to indemnify, *see Seymour Mfg. Co.,* 665 N.E.2d

Thus, the trial court correctly entered summary judgment in favor of Shelby on this issue.

### *Conclusion*

We reverse the trial court's grant of summary judgment in favor of Shelby on the Freidlines' defense and indemnity claim. In all other respects the judgment of the trial court is affirmed. This cause is remanded.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

at 892, this principle applies when the risk is insured against. Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim is patently outside of the risk covered by the policy, the insurer may properly refuse to defend. *Liberty.Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 901 (Ind.Ct.App.1992); *see also Transamerica Ins. Serv. v. Kopko,* 570 N.E.2d 1283, 1285 (Ind.1991). Here, Shelby determined the Freidlines' general liability policy provided no coverage for the workers' negligence claim. We do observe, however, that an insurer who, after making an independent determination that it has no duty to defend, fails to protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hiring independent counsel and defending its insured under a reservation of rights, does so at its own peril. *Metzler,* 586 N.E.2d at 902.