STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,
Appellant–Plaintiff,

v.

FLEXDAR, INC., and RTS Realty,
Appellees–Defendants.

No. 49A02–1002–PL–00111.

Court of Appeals of Indiana.

Nov. 22, 2010.

Jeffrey C. Gerish, Plunkett & Cooney, P.C., Bloomfield Hills, MI, Barry C. Cope, Karl Mulvaney, Kandi Kilkelly Hidde, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant State Auto. Mut. Ins. Co.

Michael A. Dorelli, Patrick J. Olmstead, Jr., Hoover Hulle LLP, Indianapolis, IN, Attorneys for Appellant Amicus Curiae Complex Ins. Claims Litig. Assoc.

Richard S. Vanrheenen, Vanrheenen & Associates, P.C., George M. Plews, Jeffrey D. Featherstun, Plews Shadley Racher & Braun LLP, Indianapolis, IN, Attorneys for Appellees Flexdar, Inc. and RTS Realty.

Frank J. Deveau, Thomas A. Barnard, David L. Guevara, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellee Amici Curiae Eli Lilly & Co., Vectren Corp., Citizens Energy Group, the

In. Manufacturers Assoc., and the In. Petroleum Marketers and Convenience Stores Assoc., Inc.

## OPINION

VAIDIK, Judge.

### Case Summary

This is an insurance coverage dispute involving interpretation of a pollution policy exclusion. Flexdar, Inc., manufactured rubber stamps and printing plates at its factory in Indianapolis. Flexdar's machinery employed the chemical solvent trichloroethylene, which leaked from the factory premises and contaminated subsoil and groundwater. The Indiana Department of Environmental Management ordered Flexdar to investigate the contamination and informed Flexdar that it could be liable for the costs of cleanup. Flexdar requested defense and indemnification from its commercial general liability insurer, State Automobile Mutual Insurance Company, and State Auto filed this action seeking declaration that it owed no coverage. State Auto invoked a policy exclusion barring coverage for claims resulting from the escape of "pollutants." The trial court entered summary judgment in favor of Flexdar. The trial court found that State Auto's pollution exclusion was ambiguous and unenforceable and thus did not preclude coverage. We agree and affirm the judgment of the trial court.

### Facts and Procedural History[1]

Flexdar manufactured rubber stamps and printing plates at its Indianapolis factory from 1994 until 2003.

Flexdar maintained several commercial general liability (CGL) insurance policies with State Auto. The policies were effective between 1997 and 2002. They required State Auto to defend and indemnify Flexdar in suits alleging "bodily injury" or "property damage" arising from "occurrences" within the coverage period. Appellant's App. p. 97. The policies set forth the following coverage exclusions respecting pollution:

2. **Exclusions**

This insurance does not apply to:

\*     \*     \*     \*     \*     \*

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

\*     \*     \*     \*.     \*     \*

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

1. We heard oral argument in this case on November 1, 2010.

*Id.* at 98. An additional policy endorsement form provided that the pollution exclusion "applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location." *Id.* at 110.

Flexdar's photoengraving machine utilized the industrial solvent trichloroethylene (TCE). While the factory was in business, Flexdar would collect spent TCE and other waste products in fifty-five-gallon drums. The drums were disposed of about once every three months.

In late 2003, investigators inspected the Flexdar plant and discovered that TCE had leaked from the premises and contaminated subsoil and groundwater. The contamination was reported to the Indiana Department of Environmental Management (IDEM). IDEM ordered Flexdar to further investigate the contamination. IDEM also informed Flexdar that it could be liable for the costs of cleanup and remediation.

Flexdar notified State Auto and requested defense and indemnification pursuant to its CGL policies. State Auto agreed to defend Flexdar against IDEM's claims under a reservation of rights.

State Auto later filed this action seeking declaration that it owed no coverage. State Auto invoked the above-quoted pollution exclusion and argued it was not liable for claims resulting from Flexdar's TCE leakage. Flexdar contended that the insurance policy's pollution exclusion was ambiguous and unenforceable.

Both parties moved for summary judgment. During summary judgment proceedings, Flexdar tendered to the trial court, among other things, a new policy endorsement form that State Auto drafted in 2004. The new form specifically identified TCE and other substances as examples of "pollutants" for purposes of State Auto's pollution exclusion. Flexdar intro-

duced the new endorsement form to show that its own policy was ambiguous and that State Auto recognized the need to clarify it by naming TCE as a pollutant. The trial court struck the evidence as irrelevant.

The trial court still entered summary judgment in favor of Flexdar, concluding that Flexdar was entitled to coverage under its policy. The trial court found that State Auto's pollution exclusion was ambiguous and thus unenforceable. The court also found that the applicable policy endorsement form did not cure the ambiguity. State Auto now appeals.

**Discussion and Decision**

State Auto argues that the trial court erred by entering summary judgment in favor of Flexdar. State Auto contends that its pollution policy exclusion is unambiguous and precludes coverage for claims resulting from Flexdar's TCE contamination. Flexdar disagrees and also maintains on appeal that State Auto's new 2004 endorsement form should be available as evidence in this case.

**I. Admissibility of the 2004
Endorsement Form**

Flexdar argues that State Auto's new 2004 endorsement form should be available as evidence in this dispute. Flexdar claims that the 2004 endorsement form is admissible and relevant to prove ambiguity in the parties' executed pollution exclusion. Flexdar contends that by revising the exclusion, "State Auto demonstrated its own belief that it needed to specifically identify substances like TCE to try to eliminate the ambiguity and effect a reduction in coverage." Appellees' Br. p. 27–28.

In ruling on a motion for summary judgment, the trial court may consider only properly designated evidence that would be admissible at trial. *Hays v. Harmon*,

809 N.E.2d 460, 464 (Ind.Ct.App.2004), *trans. denied.*

■ Indiana Evidence Rule 407 provides:

> When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. The rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Evidence Rule 407 is substantially similar to its federal counterpart. *See* Fed. R.Evid. 407. Pursuant to the rule, evidence of post-occurrence remedial measures is generally inadmissible. *Hagerman Constr., Inc. v. Copeland,* 697 N.E.2d 948, 954 (Ind.Ct.App.1998), *trans. denied.* Evidence of a subsequent remedial measure may be admitted when offered for purposes other than proving culpable conduct. *Id.*

Two principal concerns underlie Rule 407. *Strack & Van Til, Inc. v. Carter,* 803 N.E.2d 666, 670 (Ind.Ct.App.2004). The first is that permitting proof of subsequent remedial measures will deter a party from taking action that will prevent future injuries. *Id.* The second is doubt over the probative value of subsequent measures in proving omission or misconduct. *Id.* at 670–71.

Rule 407 is typically associated with personal injury and other negligence cases. *See* 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5285 (1st ed.1980). The most common types of remedial measures addressed under the rule are product design changes, additions of safety devices, warning provisions, and abandonment of tools or prod-

ucts. 12 Robert Lowell Miller, Jr., *Indiana Practice: Indiana Evidence* § 407.101 (3d ed.2007).

Rule 407 is worded broadly, however, and courts have applied it in many other contexts including intentional tort and contract claims. *See* Wright & Graham, *supra,* § 5283; *see also* 1 Michael H. Graham, *Handbook of Federal Evidence* § 407:1 n.6 (6th ed. 2009) ("The breadth of exclusion under Rule 407 includes ... [m]odifications made to clarify contract language.").

And more specifically, authorities have read Rule 407 to exclude evidence of subsequent policy revisions in insurance coverage disputes. *See, e.g., Pastor v. State Farm Mut. Auto. Ins. Co.,* 487 F.3d 1042, 1045 (7th Cir.2007). In *Pastor,* the insured was involved in a car accident. *Id.* at 1044. She claimed that her automobile insurer owed her a daily allowance for the period in which her vehicle was being repaired. *Id.* The insured and insurer wound up disputing the meaning of the term "day" in the pertinent policy provision. *Id.* at 1045. The insured argued that "day" meant "any part of a day, however small." *Id.* The insurer maintained that "day" meant a full twenty-four-hour period. *Id.* To support her interpretation, the insured relied on a subsequent version of the policy in which the insurer specified that "day" meant twenty-four hours. *Id.* The Seventh Circuit explained that the insured's reliance on this evidence was impermissible:

> The subsequent version of the clause, in which State Farm made explicit that "day" means 24 hours, and which State Farm describes as a clarification, Pastor deems a confession that her interpretation of the original clause is correct. Obviously it is not a confession. And to use at a trial a revision in a contract to

argue the meaning of the original version would violate Rule 407 of the Federal Rules of Evidence, the subsequent-repairs rule, by discouraging efforts to clarify contractual obligations, thus perpetuating any confusion caused by unclarified language in the contract.... Pastor wants to use the evidence that State Farm, to avert future liability to persons in the position of the plaintiff, changed the policy, to establish State Farm's "culpable conduct." That is one of the grounds that evidence of subsequent corrective action may not be used to establish.

*Id.*; *see also Ekco Group, Inc. v. Travelers Indent. Co. of Ill.*, 273 F.3d 409, 415 (1st Cir.2001) ("[E]xpression can always be made clearer and to change language in a policy is simply a precaution against recurrent misunderstanding.").

■ We agree with *Pastor* and conclude that Rule 407 may bar evidence of subsequent policy revisions offered to resolve ambiguity in an executed insurance contract.

■ Here, Flexdar and State Auto executed several CGL policies subject to a pollution exclusion. The parties now disagree as to whether the term "pollutant" in the exclusion is ambiguous or contemplates a leakage of TCE. State Auto apparently revised its standard policy forms in 2004 to specify TCE as a pollutant. In line with the foregoing, we conclude that any modifications that State Auto made to its policy forms in 2004 constitute subsequent remedial clarifications which are not admissible to interpret Flexdar's insurance contract and prove State Auto's liability. Furthermore, Flexdar offered no theory of independent relevance to the trial court at the summary judgment stage justifying admission of the evidence pursuant to Rule 407's second sentence. We therefore find that the 2004 endorsement form was inadmissible under Rule 407 and that the trial court did not err by striking it from the designated evidence.

## II. Interpretation of the Policy and Pollution Exclusion

State Auto contends that its pollution exclusion is unambiguous and precludes coverage for Flexdar's TCE contamination.

### A. Standard of Review/Rules of Policy Construction

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1062 (Ind.2007).

■ Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment. *Liberty Ins. Corp. v. Ferguson Steel Co., Inc.*, 812 N.E.2d 228, 230 (Ind.Ct.App.2004). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Eli Lilly Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). An ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other. *Linder v. Ticor Title Ins. Co. of Cal., Inc.*, 647 N.E.2d 37, 39 (Ind.Ct. App.1995). An insurance policy is ambig-

uous if reasonable people may honestly differ as to the meaning of the policy language. *Id.* Where there is ambiguity, insurance policies are to be construed strictly against the insurer. *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind. 1996), *reh'g denied.*

### B.  Pollution Exclusions in Indiana

The coverage exclusion at issue in this case is known as the "absolute" pollution exclusion. *See* 9 Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance* §§ 127:13–14 (3d ed.2008). Indiana courts have addressed the exclusion in several contexts and have routinely found it ambiguous and unenforceable.

In *American States Insurance Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996), *reh'g denied,* our Supreme Court held that the absolute pollution exclusion did not bar coverage for claims resulting from a petroleum leakage at the insured's gas station. *Id.* at 948–49. The insured party in *Kiger* owned a gas station and maintained various liability policies with American States. *Id.* at 946. One set of policies contained the absolute pollution exclusion, purportedly disallowing coverage for " '[b]odily injury,' 'property damage' or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.' " *Id.* at 948. "Pollutants" meant "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* An underground storage tank at the insured's gas station leaked petroleum product. *Id.* at 946. IDEM cleaned up and filed an action against the insured seeking reimbursement. *Id.* The insured filed a third-party complaint against American States seeking defense and indemnification. *Id.* at 947. The trial court entered summary judgment for the

insured, concluding he was entitled to coverage, and our Supreme Court affirmed. *Id.* at 947, 949. The Court held that American States' pollution exclusion was ambiguous and thus unenforceable. *Id.* The Court explained as follows:

We begin by noting one oddity in American States' position. That an insurance company would sell a "garage policy" to a gas station when that policy specifically excluded the major source of potential liability is, to say the least, strange. It remains true, however, that if the policy clearly excludes such coverage, that contract will be enforced.

\*     \*     \*     \*     \*     \*

Clearly, [the pollution exclusion] clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a "chemical," there would be no insurance coverage. Accordingly, this clause requires interpretation. . . . We are particularly troubled by the interpretation offered by American States, as it makes it appear that Kiger was sold a policy that provided no coverage for a large segment of the gas station's business operations. In addition, the language excludes coverage for damage caused by "alleged discharge[s]" of "pollutants," which could be understood to mean that a mere allegation of pollution discharge could defeat all coverage.

In any event, since the term "pollutant" does not obviously include gasoline and, accordingly, is ambiguous, we . . . must construe the language against the insurer who drafted it. Appellant claims that in common parlance gasoline is sometimes referred to as a pollutant. That may be correct, but the ambiguity remains. If a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language

of the contract must be explicit. This follows the more general rule of construing exclusions strictly against the insurer and in favor of coverage. In this case that requires that coverage for the gasoline contamination which occurred be available under the [ ] policies.

*Id.* at 948–49 (citation omitted).

Then in *Seymour Manufacturing Co., Inc. v. Commercial Union Insurance Co.,* 665 N.E.2d 891 (Ind.1996), *reh'g denied,* the Court held that an absolute pollution exclusion did not preclude defense coverage for a leakage of contaminants from the insured's waste disposal facility. *Id.* at 892. The insured in *Seymour* operated a business which stored, treated, and disposed of waste generated by manufacturers. *Id.* at 891. The insured maintained multiple liability policies "virtually identical" to those at issue in *Kiger. Id.* at 892. One of the policies excluded coverage for damage caused by enumerated pollutants without exception. *Id.* Hazardous materials allegedly spilled from the insured's facility causing soil contamination, fumes, fires, and odor problems. *Id.* The Environmental Protection Agency filed suit against the insured claiming that it improperly stored its waste and caused the leakage. *Id.* The insured sought defense from its insurer, and the Supreme Court held that the insurer had a duty to defend despite the purported pollution exclusion. *See id.* The Court explained that in *Kiger,* the term "pollutant" was found to be ambiguous and was thus construed against the insurer and in favor of coverage. *Id.*

Following *Kiger* and *Seymour,* the Indiana legislature attempted in 1997 to codify the pollution exclusion and to define more firmly the term "pollutant" for purposes of insurance policies. *See* H.E.A. 1583, 110th Gen. Assemb., First Reg. Sess. (Ind.1997). House Enrolled Act 1583 provided that "[t]he term pollutant or pollu-

tants, when used in an insurance policy that generally defines pollutant or pollutants, means: (1) an irritant; (2) a contaminant; (3) a hazardous substance; (4) a hazardous waste; (5) petroleum; (6) a regulated substance; or (7) any substance that is: (A) subject to regulation under IC 13 and included within a term defined in IC 13–11–2; or (B) regulated under 42 U.S.C., as amended." *Id.* The bill passed both the House and Senate but was vetoed by Governor Frank O'Bannon. *See* Veto Message from the Governor, *Journal of the House of Representatives,* 110th Gen. Assemb., First Spec. Sess. (Ind. May 14, 1997). Governor O'Bannon stated in his veto message that such legislation "would codify what should be a private contractual matter between an insurer and its insured.... The insurance industry can address the problem by drafting a clear and unambiguous contractual pollution exclusion." *Id.; see also* S. 451, 110th Gen. Assemb., First Reg. Sess. (Ind.1997) (another unenacted bill seeking to define "pollutants").

This Court next held in *Travelers Indemnity Co. v. Summit Corp. of America,* 715 N.E.2d 926 (Ind.Ct.App.1999), that the absolute pollution exclusion did not preclude coverage for the escape of industrial chemicals at the insured's metal factories. *Id.* at 935. The insured in *Summit* manufactured metal parts at various facilities throughout the country. *Id.* at 929. The company maintained several comprehensive general liability policies subject to the absolute pollution exclusion. *Id.* at 929, 934–35. Chemicals associated with the insured's metal electroplating operations were allegedly released into soil and groundwater. *Id.* at 929. The EPA and other agencies ordered the insured to clean up the contaminants. *Id.* The insured sought coverage, and this Court held that the insured was entitled to defense

and indemnification under its liability policies. *Id.* at 935. We stated:

> Were we writing on a clean slate, we might well conclude that the language of the exclusion is clear and excludes coverage for the environmental claims against Summit. However, our supreme court has twice recently considered exclusionary language that is, for practical purposes, the same as in the exclusions here. Both with regard to the duty to indemnify in *American States Ins. Co. v. Kiger* and the duty to defend in *Seymour Mfg. Co. v. Commercial Union Ins.* our supreme court has determined the exclusion to be ambiguous and has construed it against the insurer.

*Id.* We followed suit, held the policy exclusion ambiguous, and construed it against the insurer so as not to exclude coverage for the environmental claims. *Id.*

And in *Freidline v. Shelby Insurance Co.*, 774 N.E.2d 37 (Ind.2002), our Supreme Court held that an absolute pollution exclusion did not bar coverage for the release of toxic fumes from a commercial building's carpet glue. *Id.* at 40. The insureds in *Freidline* owned a commercial office building. *Id.* at 39. They maintained a general liability insurance policy containing the absolute pollution exclusion. *Id.* at 39–40. The insureds hired a subcontractor to replace the carpet in some of their offices. *Id.* at 39. Office workers complained that they were inhaling toxic fumes from the new carpet glue. *Id.* The workers sued the insureds, who sought defense and indemnification pursuant to their general liability policies. *Id.* The insurer denied coverage. *Id.* The insureds filed a claim to enforce their rights under the insurance policy. *Id.* The Court of Appeals found the pollution exclusion ambiguous, and the Supreme Court summarily affirmed. *Id.* at 40. In the context of another issue raised on appeal, the Su-

preme Court acknowledged that the "scope of the pollution exclusion is an evolving area of law, subject to differing interpretations." *Id.* at 42. But the Supreme Court reaffirmed *Kiger* and *Seymour* and concluded that the policy's pollution exclusion did not exclude coverage for injuries resulting from the toxic fumes. *Id.* at 40 & n. 1.

Most recently, in *National Union Fire Insurance Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 917 N.E.2d 170 (Ind.Ct. App.2009), *trans. granted*, this Court found that the absolute pollution exclusion did not preclude coverage for the alleged release of perchlorate from the insured's flare factory. *Id.* at 184–85. The insured in *Standard Fusee* manufactured highway, railway, and marine signal flares. *Id.* at 174. The company maintained multiple insurance policies all containing the absolute pollution exclusion. *Id.* at 183. The insured's flare production involved the chemical ingredient perchlorate. *Id.* at 174–75. Perchlorate was allegedly discovered in water samples at and around one of the insured's facilities. *Id.* The insured faced environmental liability and sought defense and indemnification under its policies. *Id.* at 175. The company's insurer refused coverage pursuant to the pollution exclusion, but we found the exclusion ambiguous and unenforceable under *Kiger* and the line of cases following it. *Id.* at 185. *Standard Fusee* also involved choice-of-law and existence-of-suit issues, and the case is now before our Supreme Court on transfer. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 929 N.E.2d 796 (Ind. Jun 17, 2010) (Table).

## C. *Resolution of this Case*

[9] State Auto argues that *Kiger* is inapplicable in this case, that its holding is limited to its fact set, and that it establishes only that "[i]f a garage policy is intended to exclude coverage for damage

caused by the leakage of gasoline, the language of the contract must be explicit"—or otherwise stated, if a contaminant comprises a large part of the insured's operations or a major source of potential liability, it must be expressly identified in a pollution exclusion to be excepted from coverage. State Auto claims that *Kiger* does not invalidate the absolute pollution exclusion wholesale. While *Kiger* might be so understood, we believe that *Seymour*, *Freidline*, and *Summit* extend *Kiger* beyond its facts and affirm generally the ambiguity of the absolute pollution exclusion.

State Auto attempts to distinguish and/or dismiss *Seymour*, *Freidline*, and *Summit*. State Auto claims that *Seymour* did not deal squarely with the absolute pollution exclusion, that *Freidline* retreats from *Kiger* and involved a non-environmental damage claim anyway, and that *Summit* was misguided and failed to properly analyze the definition of "pollutants." We find none of State Auto's contentions/distinctions substantiated by the text and holdings of those opinions.

State Auto further maintains that its policy endorsement form cures any purported ambiguity in the absolute pollution exclusion. The endorsement form provides that the pollution exclusion "applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location." We see no reason that endorsement form is of any consequence here. The endorsement clause takes effect only when the contaminant at issue has first been identified as a pollutant and the pollution exclusion has been determined to apply. But the exclusion itself has already been held ambiguous and unenforceable in *Kiger*, *Seymour*, *Freidline*, and *Summit*. Accordingly, the endorsement form does not come into play and is thus unavailing.

■ We conclude, pursuant to the last fourteen years of precedent, that State Auto's absolute pollution exclusion is ambiguous, must be construed in favor of the insured, and therefore will not operate to preclude coverage in connection with Flexdar's TCE leakage. Under *Kiger* and its progeny—and consistent with the above-quoted 1997 executive veto—an insurance policy must be specific if it wishes to except from coverage claims relating a particular alleged contaminant. It is within the province only of our Supreme Court to decide otherwise.

For these reasons we affirm the trial court's entry of summary judgment for Flexdar.

Affirmed.

MAY, J., and ROBB, J., concur.