## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANTS

Jason R. Delk
Daniel J. Gibson
Delk McNally, LLP
Muncie, Indiana

ATTORNEY FOR APPELLEE

Mark R. Smith
Smith Fisher Maas Howard & Lloyd, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon George, Dustin George and 2911 Investments, LLC, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Pekin Life Insurance Company, <br><br> *Appellee-Defendant.* | June 4, 2015 <br><br> Court of Appeals Cause No. 38A02-1410-PL-751 <br><br> Appeal from the Jay Circuit Court Cause No. 38C01-1006-PL-8 <br><br> The Honorable Brian D. Hutchison, Judge |

**Barnes, Judge.**

## Case Summary

[1]     Brandon George, Dustin George, and 2911 Investments, LLC, (collectively "the Beneficiaries"), as beneficiaries of a life insurance policy obtained by John

George, appeal the trial court's grant of summary judgment in favor of Pekin Life Insurance Company ("Pekin") following Pekin's rescission of the policy. We affirm in part and reverse in part.

## Issues

The Beneficiaries raise one issue, which we restate as:

> I. whether the trial court properly granted summary judgment on their breach of contract claim; and
>
> II. whether the trial court properly granted summary judgment on their bad faith claim, which included a request for punitive damages.

## Facts

In June 2008, John applied for a $500,000 life insurance policy from Pekin. In completing the application, John answered no when asked if he had diagnosis or treatment within the last five years for "any disorder of the heart or circulatory system, such as high blood pressure, heart attack, heart murmur, chest pain, irregular heartbeat, varicose veins or phlebitis?" Appellee's App. p. 13. John also answered no when asked if he "had or had been advised to have any surgical operations, x-ray, heart study, electrocardiogram or other laboratory examinations within the last 5 years?" *Id.* John answered no when asked if, to the best of his knowledge, he had "any mental or physical impairment, disease or deformity not indicated above?" *Id.*

During a paramedical exam performed by Pekin and follow-up questioning, John was asked similar questions about his medical history and denied any

significant medical history. Pekin tested John's blood pressure and cholesterol, and he underwent an EKG. The findings of these tests were "normal." *Id.* at 205. Although John had issued a medical release authorization, Pekin did not obtain his medical records at that time.

[5] On July 23, 2008, Pekin issued the policy. The policy had an incontestability provision that said:

> We may be able to deny a claim if you do not make all premium payments when due. Except for that, we can never deny a claim unless:
>
> - The death occurs within 2 years of the policy date; and
> - An answer in the application was not true or complete; and
> - If we had known the truth we would not have issued the policy.
>
> This provision does not apply to any rider providing benefits for disability or death by accident.

*Id.* at 24.

[6] On February 14, 2009, John died. The cause of death was "sudden cardiac death." *Id.* at 72. A history of hypertension and elevated cholesterol were identified as "other significant conditions contributing to death but not resulting in the underlying" cause of death. *Id.* (emphasis omitted).

[7] The beneficiaries submitted a claim for the proceeds of the policy, and Pekin investigated the claim. As part of its investigation, Pekin obtained John's medical records. The records indicated that, in early March 2004, John saw Dr. William Kemp for a check-up and complained of chest pain, which was described as "light pain—almost like a heartburn." *Id.* at 187. John was

prescribed cholesterol and blood pressure medication and referred to a cardiologist, Dr. Charles Lin. During his appointment with Dr. Lin, John complained of "some chest pain radiating into left arm off and on for the past one year. It may occur any time. It does not appear to increase with activity, and his pressure only lasts a few seconds." *Id.* at 171. Dr. Lin conducted an EKG and an echocardiogram. The EKG was normal, and the echocardiogram indicated a mildly reduced left ventricular ejection fraction. A treadmill stress test was scheduled, but John did not keep the appointment. The records indicated that John saw Dr. Kemp again in March 2004 and June 2004. Because John omitted this medical history in his application, Pekin rescinded the policy and refunded the premiums paid by John.

[8]     The Beneficiaries filed a complaint against Pekin and the insurance agent that sold John the policy.[1] The Beneficiaries alleged that Pekin breached its contract with John and acted in bad faith by denying their claim. Pekin denied the allegations and filed a counterclaim for rescission based on John's omitted medical history. Pekin later moved for summary judgment on the Beneficiaries' claims. After the matter was fully briefed, the trial court granted Pekin's motion for summary judgment. The Beneficiaries now appeal.

---

[1] The negligence claim against the agent was eventually dismissed.

# Analysis

"We review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court." *Perdue v. Gargano*, 964 N.E.2d 825, 831 (Ind. 2012). "Therefore, summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Ind. Trial Rule 56(C)). Our review of summary judgment is limited to evidence designated to the trial court. *Id.* (citing T.R. 56(H)). All facts and reasonable inferences drawn from the evidence designated by the parties are construed in a light most favorable to the non-moving party, and we do not defer to the trial court's legal determinations. *Id.*

## I. Breach of Contract

The Beneficiaries contend that the trial court improperly granted Pekin's motion for summary judgment because there are questions of fact regarding the materiality of John's omissions during the application process. "'False representations concerning a material fact, which mislead, will void an insurance contract, just as any other contract, regardless of whether the misrepresentation was innocently made or made with a fraudulent intent.'" *Bennett v. CrownLife Ins. Co.*, 776 N.E.2d 1264, 1269 (Ind. Ct. App. 2002) (quoting *Primerica Life Ins. Co. v. Skinner,* 678 N.E.2d 1140, 1142 (Ind. Ct. App. 1997)). A representation is material if the fact omitted or misstated, if truly stated, might reasonably have influenced the insurer's decision to issue the policy or to charge a higher premium. *Id.* at 1269-70. The materiality of a

misrepresentation generally is a question of fact for the jury. *Id.* at 1270. It may be determined as a matter of law if the evidence is such that there can be no reasonable difference of opinion. *Id.*

[11] To show there was no reasonable difference of opinion regarding the materiality of John's omitted medical history,[2] Pekin directs us to a portion of the deposition of Diane Steiner, Pekin's Vice-President of Underwriting. During her deposition, Steiner stated:

> A.     If those conditions are fully evaluated by a physician and are under treatment and controlled, yes, there are circumstances we can offer coverage, but we would never offer coverage on someone who has not had all the required tests or recommended tests by their doctor. That's the stopping point for us in underwriting if somebody is recommended to have a test and they did not have it. We do not issue.
>
> * * * * *
>
> A. . . . . If it's a test for a heart test to find out why they're having chest pain, we would not issue a policy unless it was fully evaluated and they knew the etiology or the reason for the chest pain.
>
> Q. Certainly there has to be some sort of time limitation on that. It can't be that hard and fast, can it?
>
> A. In underwriting it is.

Appellee's App. p. 144.

[12] Pekin also points to the affidavit of Dr. James Smalley, the Medical Director for Pekin, who stated that the 2008 EKG, blood pressure readings, and cholesterol

---

[2] Pekin's extensive citation to cases addressing insurance coverage and material misrepresentations are of little value here where the nature of the each case is fact specific.

levels did not rule out the possibility that John had coronary artery disease ("CAD") in 2008. Dr. Smalley stated he had treated many patients with CAD, "who, on a particular date, had a normal EKG, normal blood pressure and normal cholesterol. That is why it is extremely important to obtain from a patient a comprehensive medical history addressing coronary artery disease." *Id.* at 205. In a supplemental affidavit, Dr. Smalley asserted that John's consultation report with Dr. Lin "is consistent with John George having significant coronary artery disease [.]" Appellants' App. p. 193.

[13] In response, the Beneficiaries point out that John was never diagnosed with CAD and that there is no evidence that John failed to continue taking his medication as prescribed in 2004. They also assert that the three blood pressure readings and cholesterol test conducted during the paramedical exam indicated that John's blood pressure and cholesterol levels were under control in 2008. The Beneficiaries also direct us to Steiner's testimony that John's blood pressure and cholesterol were under control and that his EKG was normal at the time of the 2008 exam. *See id.* at 95. The Beneficiaries also refer to Pekin's underwriting manuals, which Pekin did not consult in issuing or rescinding the policy, to suggest that that John's 2004 treatment would not have impacted his insurability in 2008.[3] *See id.* at 211-15.

---

[3] In response to this argument by the Beneficiaries, Pekin analyzes John's 2004 blood pressure readings and EKG and the results of a hypothetical abnormal stress test under the underwriting manuals' guidelines. Pekin's argument, however, does not account for the four years that passed from 2004 to 2008. We fail to see how the proposed 2004 analysis establishes as a matter of law that a policy would not have been issued in

[14] Our supreme court has recently described summary judgment as a blunt instrument by which the non-prevailing party is prevented from having his or her day in court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (quotations omitted). The court cautioned that summary judgment is not a summary trial and that summary judgment is not appropriate merely because the non-movant appears unlikely to prevail at trial. *Id.* at 1003-04. The court reiterated that "[s]ummary judgment 'is a desirable tool to allow the trial court to dispose of cases where only legal issues exist.'" *Id.* at 1003 (quoting *Clipp v. Weaver,* 451 N.E.2d 1092, 1093 (Ind. 1983)). "In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004.

[15] Based on the designated evidence, we believe this is the very type of case the *Hughley* court spoke to. *Cf. e.g.*, *Bennett*, 776 N.E.2d at 1271 (affirming the grant of summary judgment where, as a matter of law, material misrepresentation on an insurance enrollment form voided the insurance policy). This conclusion is exemplified by Pekin's reference to John's 2004 complaint of chest pain as "chronic" radiating pain while the Beneficiaries refer to it as "light pain— almost like a heartburn." *See* Appellee's App. p. 197; Appellants' App. p. 125. Given the conflicting evidence about whether Pekin would have issued the policy in 2008 had it known about John's 2004 treatment for chest pain, Pekin

2008. This is especially true when the manuals suggest that time is a factor is assessing blood pressure and noncardiac and atypical angina chest pain syndromes.

has not established as a matter of law that John's omissions were material misrepresentations. *See Hughley*, 15 N.E.3d at 1005 (concluding that summary judgment should not be granted when it is necessary to weigh the evidence). Because it is necessary to weigh the evidence, summary judgment on the Beneficiaries' breach of contract claim was not proper.

## II. Bad Faith and Punitive Damages

[16] The trial court also granted summary judgment on the Beneficiaries' bad faith claim for which they sought punitive damages. Indiana law recognizes an implied legal duty for the insurer to deal in good faith with its insured. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). Our supreme court has noted that a cause of action will not arise every time an insurance claim is erroneously denied. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 520 (Ind. 1993). "For example, a good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith." *Freidline,* 774 N.E.2d at 40. "On the other hand, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty." *Id.* To prove bad faith, the Beneficiaries must establish, with clear and convincing evidence, that Pekin had knowledge that there was no legitimate basis for denying liability. *See id.*

[17] Pekin claims it had a rational, principled basis for rescinding the policy based on John's omissions. In response, the Beneficiaries claim that Pekin failed to follow up with Dr. Kemp and Dr. Lin to clarify John's medical records before rescinding the policy. Given the nature of the omissions and the circumstances

of John's death, we must agree that, as a matter of law, Pekin's rescission of the policy was not done in bad faith. Summary judgment on this claim was proper. Likewise, the Beneficiaries' request for punitive damages must also fail because there is no evidence to support a claim for that type of damages. *See Erie*, 622 N.E.2d at 520 (explaining that "the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages[,]" which may be awarded only if there is clear and convincing evidence that an insurer acted with malice, fraud, gross negligence, or oppressiveness that was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing).

# Conclusion

[18] Because Pekin did not establish that, as a matter of law, the omitted medical history in John's application was a material misrepresentation, the trial court should not have granted summary judgment on the Beneficiaries' breach of contract claim. However, summary judgment on the Beneficiaries' bad faith claim and request for punitive damages was proper because, as a matter of law, there was a good faith coverage dispute. We affirm in part and reverse in part.

[19] Affirmed in part and reversed in part.

Riley, J., and Bailey, J., concur.